```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
NANCY AMHAZ, et al.,                                        :
                                                            :
                            Plaintiffs,                     :   17-CV-2120 (GBD) (OTW)
                                                            :
             -against-                                      :   REPORT & RECOMMENDATION
                                                            :
BOOKING.COM (USA) INC., et al.,                             :
                                                            :
                            Defendants.                     :
                                                            :
------------------------------------------------------------x
```

**ONA T. WANG, United States Magistrate Judge:**

**To the Honorable George B. Daniels, United States District Judge:**

Plaintiffs bring this action in accordance with the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), as well as the New York state and city human rights laws, for alleged unpaid overtime compensation, failure to provide wage statements and records, and sexual harassment and discrimination. (Complaint ("Compl.") (ECF 1) ¶¶ 31-34). After the parties reported that they had reached a settlement, Judge Daniels directed the parties to submit papers for approval under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). The *Cheeks* papers were then referred to me for a report and recommendation. (ECF 102, 103). Having reviewed the parties' submissions, for the reasons below, I recommend that the settlement be approved as fair and reasonable.

I. **Background**

Plaintiff Nancy Amhaz ("Ms. Amhaz") worked as an account manager for Defendant Booking.com (USA) Inc. ("Booking.com") from April 2012 through May 2015, tasked with contacting prospective and current hotel clients for sales and customer service needs. (Compl.

¶¶ 26, 29). In December 2014, Ms. Amhaz was promoted to "key account manager" and transferred from Booking.com's Las Vegas office to its New York office. (Compl. ¶ 26). Ms. Amhaz alleges that she regularly worked 45-50 hours per week as an account manager, and subsequently 60-70 hours per week as a key account manager. (Compl. ¶ 27). Despite working over 40 hours per week, Ms. Amhaz alleges that she never received overtime pay but was only paid a fixed salary. (Compl. ¶ 28). Ms. Amhaz alleges that she was never informed that her fixed salary included overtime compensation and was never provided proper wage notices and statements, as required by the NYLL. (Compl. ¶¶ 28, 33).

Ms. Amhaz further alleges that after she was promoted to a key account manager, she was pressured by her supervisors to flirt with her clients at out-of-office receptions and to "look pretty." (Compl. ¶¶ 30-31). On March 23, 2017, Ms. Amhaz filed her complaint against Defendants Booking.com (USA) Inc., The Priceline Group Inc.,[1] and John Does 1-10, bringing claims under the FLSA, NYLL, "applicable state wage and hour laws," the New York State Human Rights Law, and the New York City Human Rights Law. (ECF 1). Raven Britt, Bret Hamilton, and Monica Hidalgo opted into the suit as co-plaintiffs. (ECF 27, 41, 48). Plaintiffs then moved to certify a collective action under 29 U.S.C. § 216(b) on behalf of a nationwide class of managers, but Judge Pitman[2] noted Plaintiffs only submitted evidence to show the practices of account managers and key account managers employed in Booking.com's New York and Las Vegas offices as well as key account managers employed in the Los Angeles office. (ECF 74). Accordingly, Judge Pitman recommended granting the motion for conditional collective

---

[1] Plaintiff later dismissed The Priceline Group Inc. from the suit without prejudice. (ECF 14).

[2] The case was subsequently re-assigned from Judge Pitman to me on June 18, 2019.

2

certification, limited to those groups of employees. (*Id*.) On September 15, 2018, Judge Daniels adopted Judge Pitman's report and recommendation. (ECF 76 at 2). Since the opt-in notice was issued, no other employees have come forward to enter the suit. After participating in a private mediation, the parties informed the Court on May 16, 2019 that they had reached a settlement. (ECF 96).

## II. Discussion

Fed. R. Civ. P. 41(a)(1)(A) permits the voluntary dismissal of an action brought in federal court, but subjects that grant of permission to the limitations imposed by "any applicable federal statute." The Second Circuit has held that "in light of the unique policy considerations underlying the FLSA," this statute falls within that exception, and that "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks*, 796 F.3d at 206. This Court will recommend approval of such a settlement if it finds it to be fair and reasonable, employing the five non-exhaustive factors enumerated in *Wolinsky v. Scholastic Inc*.:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotations omitted).

### a. Range of Recovery and Litigation Risks

Under the proposed settlement agreement, Defendants would pay $106,000, to be distributed in the following manner: $33,000 to Plaintiff Amhaz, $13,000 to Plaintiff Britt, $12,000 to Plaintiff Hamilton, and $7,000 to Plaintiff Hidalgo. (ECF 106 at 2). Plaintiffs

calculated that Plaintiff Amhaz could be entitled to $278,202.40 in back wages, statutory damages, liquidated damages, and punitive damages if her claims went to trial. (ECF 106-5).[3] Plaintiff Amhaz's take-home amount of $33,000 therefore represents 12% of her potential recovery but 100% of her unpaid wages.[4] Plaintiff Britt's potential recovery at trial would be $138,964.70, which means that Plaintiff Britt's take-home amount of $13,000 represents 9.4% of her potential recovery but 76.5% of her unpaid wages. (ECF 106-6). Plaintiff Hamilton's potential recovery at trial would be $46,315.50, which means that Plaintiff Hamilton's take-home amount of $12,000 represents 26% of his potential recovery and 51.8% of his unpaid wages. (ECF 106-7). Plaintiff Hidalgo's potential recovery at trial would be $71,963, which means that Plaintiff Hidalgo's take-home amount of $7,000 represents 9.7% of her total recovery and 20.9% of her unpaid wages. (ECF 106-8).

Although Plaintiffs are accepting a fairly small percentage of what they are claiming, courts may approve lower settlement percentages where there are significant barriers to prevailing at trial, *e.g.*, conflicting evidence. *See Beckert v. Ronirubinov*, No. 15-CV-1951 (PAE), 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015) (approving 25% of maximum recovery). Here, Plaintiffs acknowledge that Booking.com has a strong defense that Plaintiffs were exempt from

---

[3] Plaintiff Amhaz's unpaid overtime was correctly calculated using the methodology of multiplying half of her regular rate of pay by the number of hours worked over 40 hours and then multiplying that amount by the number of weeks in that particular time frame. *See Chuchuca v. Creative Customs Cabinets Inc.*, No. 13-CV-2506 (RLM), 2014 WL 6674583, at *13 (E.D.N.Y. Nov. 25, 2014).

[4] Plaintiff Amhaz also brought sexual harassment claims, but the proposed settlement expressly states that the settlement amount is solely to settle her FLSA claims. Therefore, it is unnecessary to parse out how much of the settlement amount is to discharge Plaintiff's non-FLSA claims .*Cf. Banegas v. Mirador Corp.*, No. 14-CV-8491 (AJN), 2016 WL 1451550, at *3 (S.D.N.Y. Apr. 12, 2016) (noting that for case involving both FLSA and non-FLSA claims, the plaintiff must make clear how much is apportioned to settle the FLSA claim(s)).

the FLSA overtime provisions.[5] (ECF 106 at 2). In support, Booking.com had submitted twelve sworn affidavits from its employees describing the tasks account managers typically perform, which would support a showing that Plaintiffs' tasks were administrative and therefore falling under an FLSA exemption. (ECF 50-1 at 70-142). Plaintiffs also acknowledge that Plaintiff Hidalgo's claim is likely time-barred. (ECF 106 at 2 n. 1). With these defenses, there is a significant likelihood that Plaintiffs would have received nothing at trial on their FLSA claims. That Plaintiffs, with the exception of Plaintiff Hidalgo, will still receive more than half of their claimed unpaid wages supports finding the settlement amount as fair and reasonable.

### b. Arm's-Length Negotiation

The parties represented that the settlement was reached as the result of a private mediation, which is evidence of an arm's-length negotiation. *See Zamora v. One Fifty Fifty Seven Corp.*, No. 14-CV-8043 (AT), 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016).

### c. Risk of Fraud or Collusion

There is nothing in the record to suggest that fraud or collusion played a role in the settlement. Further, none of the Plaintiffs worked at Booking.com when they joined the suit, diminishing potential concern that any of the Plaintiffs may have been coerced into the settlement by their employer. (Compl. ¶ 26; ECF 39 ¶ 5; ECF 54 ¶ 5; ECF 55 ¶ 3).

### d. Settlement Agreement Provisions

This agreement also lacks certain objectionable provisions that courts have found fatal in other proposed FLSA settlements. The proposed settlement agreement contains no

---

[5] Employees working in a "bona fide executive, administrative, or professional capacity" or as an "outside salesman" are exempt from the FLSA's overtime compensation requirement. *See* 29 U.S.C. § 213(a)(1).

confidentiality provision and has already been filed in the public record. *See Thallapaka v. Sheridan Hotel Associates LLC*, No. 15-CV-1321, 2015 WL 5148867, at *1 (S.D.N.Y. Aug. 17, 2015) (finding an "overwhelming majority" of courts reject confidentiality provisions in FLSA settlements). Nor does the agreement contain a non-disparagement provision. *See Martinez v. Gulluoglu LLC*, 15-CV-2727, 2016 WL 206474, at *1 (S.D.N.Y. Jan. 15, 2016) (finding non-disparagement provisions generally contravene the FLSA's purpose). The settlement agreement's release provision is also appropriately limited to wage-related claims brought under the FLSA. *See* ECF 106-1 at 5; *see also Cheeks*, 796 F.3d at 206 (prohibiting releases "that have no relationship whatsoever to wage-and-hour issues").

   e. **Attorney's Fees and Costs**

The proposed settlement agreement allocates $41,000 to Plaintiffs' counsel, of which $30,274.28 would be for attorney's fees and $10,725.72 for costs. (ECF 106 at 3). Where, as here, the proposed attorney's fees award is based on an amount other than the charged fees, the Court must still employ the lodestar method to determine reasonableness. *See Hernandez v. Boucherie LLC*, No. 18-CV-7887 (VEC), 2019 WL 3765750, at *4 (S.D.N.Y. Aug. 8, 2019). The lodestar method compares the proposed fees with the lodestar amount, a reasonable hourly rate multiplied by the reasonable number of hours needed to be spent on the case. *See id*.

In support of its proposed lodestar amount, Plaintiffs submitted what appears to be contemporaneous billing records on this case. (ECF 108-1). Both of Plaintiffs' billing attorneys are fifth-year associates charging an hourly rate of $400. (*Id*.). This is higher than typically charged by other fifth-year FLSA associates, especially in the absence of any indication of the attorneys' experience. *See, e.g., Lazo v. Kim's Nails at York Avenue, Inc.*, No. 17-CV-3302 (AJN),

6

2019 WL 95638, at *2 (S.D.N.Y. Jan. 2, 2019) (finding $350 hourly rate "unreasonably high" for fifth-year FLSA associate); *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112 (PAE), 2015 WL 7736551, at *3 (S.D.N.Y. Nov. 30, 2015) (noting that partners in wage-and-hour cases generally command $300-$400 hourly rate). Accordingly, for purposes of determining the lodestar amount, the attorneys' hourly rate will be reduced to $225. The two paralegals' hourly rate should also be reduced from $125 to $75. *See Santos v. El Tepeyac Butcher Shop Inc.*, No. 15-CV-814 (RA), 2015 WL 9077172, at *2 (S.D.N.Y. Dec. 15, 2015) ("For paralegals, 'courts in this Circuit have generally found $75 an hour to be reasonable.'").

The 149.5 hours in attorney time spent on the case is not unreasonable in light of the work required in this case. The parties engaged in extensive discovery, including depositions; attended a mediation; briefed a motion for conditional collective certification; and negotiated a settlement for four plaintiffs. (ECF 106 at 3; ECF 108-1).

Using the adjusted rates above, the lodestar amount would be $30,337.50, which means the requested $30,274.28 in attorney's fees is still slightly less than the lodestar. Likewise, the $30,274.28 in fees represents 32% of the net settlement amount ($30,274.28/[$106,000-$10,725.72]), which is consistent with what courts have found reasonable. *See Singh v. MDB Construction Mgmt., Inc.*, No. 16-CV-5216 (HBP), 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one-third of settlement is the "normal rate" absent "extraordinary circumstances"); *Santos,* 2015 WL 9077172, at *3 ("courts in this District have declined to award more than one third of the net settlement amount as attorney's fees except in extraordinary circumstances."). Accordingly, I recommend approving Plaintiffs' requested attorney's fees of $30,274.28.

7

I also recommend finding that Plaintiffs' requested $10,725.72 in costs is reasonable. On October 25, 2019, Plaintiffs' counsel filed a supplemental submission supporting the claimed costs, including receipts and an attorney declaration explaining the necessity of the charges. (ECF 110 and 110-1). As shown in the attorney declaration, ECF 110 ¶¶ 4-8, the travel and meal costs were proper as they were taken in relation to depositions and a mediation. *See Collado v. Donnycarney Restaurant LLC*, No. 14-CV-3899 (GBD) (HBP), 2015 WL 4737917, at *14 (S.D.N.Y. Aug. 10, 2015) (adopting as reasonable costs for transportation, meals, and service and filing fees). Nor does Defendant challenge any of the claimed costs for which it would have documentation, *e.g.*, deposition and mediation costs.

### III. Conclusion

For the foregoing reasons, I recommend that the proposed settlement be approved as fair and reasonable.

### IV. Objections

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written objections. *See also* Fed. R. Civ. P. 6. A party may respond to any objections within fourteen (14) days after being served. Such objections, and any responses to objections, shall be addressed to the Honorable George B. Daniels, United States District Judge. Any requests for an extension of time for filing objections must be directed to Judge Daniels.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** (*See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v.*

*Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237–38 (2d Cir. 1983)).

    Respectfully submitted,

|  |  |
|---|---|
| Dated: October 29, 2019<br>New York, New York | *s/ Ona T. Wang*<br>**Ona T. Wang**<br>United States Magistrate Judge |

9